UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


UNITED STATES OF AMERICA

VS.                    CRIMINAL NO. 3:18-cr-00049-DPJ-LRA-1

DIJON JAMESE SEALS




ENTRY OF GUILTY PLEA


BEFORE THE HONORABLE DANIEL P. JORDAN III
UNITED STATES DISTRICT JUDGE
FEBRUARY 8, 2019
JACKSON, MISSISSIPPI




APPEARANCES:

FOR THE GOVERNMENT:    MS. ERIN O. CHALK

FOR THE DEFENDANT:     MR. DAMON R. STEVENSON


REPORTED BY:  CHERIE GALLASPY BOND
              Registered Merit Reporter
              Mississippi CSR #1012

_____

501 E. Court Street, Ste. 2.500
Jackson, Mississippi  39201
(601) 608-4186

1          THE COURT:  All right.  Mr. Seales, why don't you come

2     on up with your client.  All right.  Mr. Seales, it's my

3     understanding is that you wish to change your plea as to Counts

4     1 and 3 of the indictment.  Is that correct?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  Mr. Stevenson, do me a favor --

7     yeah.  Mr. Seales, I'm going to ask you a number of questions

8     here this morning.  It's important if you would speak directly

9     into the microphone because we're going to record everything

10    that you and I say today.  Ms. Powell is going to give you an

11    oath at this time.

12       (Defendant Sworn)

13         THE COURT:  All right.  Do you understand that you're

14    now under oath?

15         THE DEFENDANT:  Sir.

16         THE COURT:  Do you understand that you're now under

17    oath and that your answers to my questions have to be truthful?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you understand that if your answer are

20    not truthful that you could be prosecuted for giving a false

21    statement?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  All right.  What is your full name?

24         MR. STEVENSON:  I apologize.  Just briefly, Your

25    Honor.

1      (Short Pause)

2           THE DEFENDANT:  Dijon Jamese Seales.

3           THE COURT:  All right.  Mr. Seales, if I ask you a

4      question today that you can't hear, I want you to tell me that

5      you can't hear it.  And if I ask you a question that you don't

6      understand, if you want me to repeat the question I want you to

7      let me know.  Okay?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  I want to make sure that before you answer

10     that you fully understand what I'm asking so that we're all on

11     the same page.  Okay?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And obviously you need to answer out loud

14     to all of these questions so that we can make a record.  All

15     right?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  How old are you?

18          THE DEFENDANT:  Twenty-eight.

19          THE COURT:  I'm sorry?

20          THE DEFENDANT:  Twenty-eight.

21          THE COURT:  Twenty-eight?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Okay.  How far did you go in school?

24          THE DEFENDANT:  Seventh grade.

25          THE COURT:  Okay.  Are you able to read and write?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Okay.  Have you ever been treated for any

3    mental illnesses?

4            THE DEFENDANT:  No, sir.

5            THE COURT:  Have you ever been treated for any

6    addiction to narcotic drugs of any kind?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Tell me about that.

9            THE DEFENDANT:  When I first went to prison, I got a

10   certificate for alcohol and drugs.

11           THE COURT:  Okay.  Have you had any treatment when you

12   weren't incarcerated?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Where was that treatment?

15           THE DEFENDANT:  Rehab at a church in Neshoba County.

16           THE COURT:  Okay.  How long ago was that?

17           THE DEFENDANT:  2010, '09, '10.

18           THE COURT:  Okay.  Are you currently --

19           THE DEFENDANT:  No, sir, I'm sorry.  It may have been

20   2012.

21           THE COURT:  Okay.  Are you currently under the

22   influence of any drug, medication, or alcoholic beverage of any

23   kind?

24           THE DEFENDANT:  No, sir.

25           THE COURT:  All right.  Do you feel like you're able

1    to communicate with Mr. Stevenson?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  You feel like you can understand what he's

4    telling you?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Do you feel like you can express your

7    thoughts to him?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Okay.  Do you feel like that you can, you

10   know, speak with him well enough to assist in your own defense?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Okay.  Do you understand why we're here

13   today and what's happening?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Okay.  On the date of the offense that's

16   charged in the indictment, were you mentally able to know the

17   difference between right and wrong?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  And did you know that it was wrong to

20   engage in drug trafficking and to possess a firearm as a

21   convicted felon?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Okay.  Mr. Stevenson, obviously Mr. Seales

24   is emotional, and I understand that completely.  I want to make

25   sure is there any indication that you've seen that would

suggest that he would lack competence to go forward today?

MR. STEVENSON:  No, sir.  I do believe that he does understand the nature of the proceedings and can participate knowingly and intelligently.

THE COURT:  You feel like he's able to assist you in his defense?

MR. STEVENSON:  Yes, sir, Your Honor.

THE COURT:  Okay.  All right.  Ms. Chalk, do you have any reservations with respect to his competence to enter a plea?

MS. CHALK:  No, Your Honor.  The government does not raise any issue as to the competency of this defendant.

THE COURT:  All right.  Mr. Seales, did you read the indictment, those are the written charges against you in this case?

THE DEFENDANT:  Yes, sir.

THE COURT:  And did you have a chance to fully discuss those charges and any other possible charges with Mr. Stevenson?

THE DEFENDANT:  Yes, sir.

THE COURT:  Were you able to discuss your case in general with your attorney to include any possible defenses that you might have?

THE DEFENDANT:  Yes, sir.

THE COURT:  And was he able to answer your questions

1    for you?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And do you feel like you fully understand

4    what the government says you did in this indictment?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  All right.  Mr. Stevenson, would you agree

7    that you've had those conversations and he does understand the

8    charges he faces?

9              MR. STEVENSON:  Yes, sir, Your Honor.

10             THE COURT:  Mr. Seales, are you satisfied with the

11   amount of time you've had to spend with your attorney?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Are you satisfied with the amount of time

14   your attorney has spent on your case?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Are you fully satisfied with the counsel,

17   representation, and advice given to you in this case by

18   Mr. Stevenson?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Now, if you have any complaints about your

21   attorney, I do want to know about it.  But today's the best day

22   to let us know.  Do you have any kind of complaints?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  All right.  I understand that your

25   agreement with the government has been written down in a couple

of documents.  One is a plea agreement and the other is called the plea supplement.  Did you have a chance to read both of those documents and discuss them with Mr. Stevenson before you signed them?

THE DEFENDANT:  Yes, sir.

THE COURT:  And did you have a chance to ask your attorney any questions that you night have had about what those documents say?

THE DEFENDANT:  Yes, sir.

THE COURT:  And was Mr. Stevenson able to answer your questions for you?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you feel like you fully understand the terms of both the plea agreement and the supplement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Stevenson, do you agree you have gone through those documents with your client and that he does understand the terms of his agreement with the government?

MR. STEVENSON:  Yes, sir.  And I would just state for the record although the plea agreement and supplement is signed and dated today, my client was previously supplied a copy of both of these documents and we had previously discussed them many weeks prior to today.

THE COURT:  Okay.  All right.  Mr. Seales, Ms. Chalk is going to tell me the key provisions of these agreements.

1    And then when she's finished, I'm going to ask if you agree

2    with her description of the documents.  Ms. Chalk?

3         MS. CHALK:  Thank you, Your Honor.  Your Honor, in

4    this particular case, the defendant has agreed to plead guilty

5    to Count 1 and Count 3 of the indictment.  Count 1 charges the

6    defendant with a violation of Title 21, United States Code,

7    Section 841(a)(1).  The defendant is charged with possession

8    with intent to distribute five grams of more of

9    methamphetamine.  He's also charged in Count 3 in the

10   indictment with violation of Title 18, United States Code

11   Section 824(c)(1) possession of a firearm in furtherance of a

12   drug trafficking crime.

13        The defendant -- in exchange for the defendant's

14   agreement, the government will recommend the defendant be

15   sentenced as set forth in the plea supplement that is filed

16   under seal.  The plea supplement and plea agreement have been

17   executed by the defendant, his attorney, and myself on behalf

18   of the United States.

19        The defendant also agrees to forfeit his interest in a

20   Glock 43 pistol bearing serial number BEME924, a Ruger AR-15

21   assault rifle bearing serial number 854138-43.  Your Honor, the

22   indictment registers it as a Ruger AR-15 assault rifle.  It is

23   an AR-556 assault rifle.  They are both assault types, but the

24   serial number is correct.  We would make a motion for a

25   scrivener's error as to that, but the agreed preliminary order

1    of forfeiture will reflect the specific Ruger markings.

2             THE COURT:  Any objection to that?

3             MR. STEVENSON:  No, sir, Your Honor.

4             THE COURT:  All right.  That's granted.

5             MS. CHALK:  He also agrees to forfeit a bump stock and

6    any ammunition.  The government will also move to dismiss at

7    sentencing the remaining counts of this indictment and charges

8    filed in a companion indictment in criminal number

9    3:18CR52DPJ-LRA.

10            The defendant also hereby expressly waives the

11   following rights, except that the defendant reserves the right

12   to raise ineffective assistance of counsel claims.

13            The defendant waives the right to appeal the

14   conviction and sentence or the manner in which that sentence

15   was imposed under any ground whatsoever.

16            He waives the right to contest the conviction and

17   sentence or the manner in which that sentence was imposed in

18   any postconviction proceeding, including but not limited to, a

19   motion under Title 28 United States Code Section 2255 and any

20   type of proceeding claiming double jeopardy or excessive

21   penalty as a result of any forfeiture ordered in this case.

22            The defendant waives any right to seek attorneys fees

23   and costs.  The defendant waives all rights, whether asserted

24   directly or by a representative, to request or receive records

25   about this case under the Freedom of Information Act or the

1  Privacy Act.

2      The defendant further acknowledges and agrees that any

3  factual issues regarding the sentencing will be resolved by the

4  sentencing judge under a preponderance of the evidence

5  standard, and the defendant waives any right to a jury

6  determination of these sentencing issues.

7      The defendant further agrees that in making its

8  sentencing decision, the district court may consider any

9  relevant evidence without regard to its admissibility under the

10  rules of evidence applicable at trial.

11      At this time, Your Honor, the United States requests

12  the court have the defendant personally confirm that he

13  understands and agrees with the terms of plea agreement, the

14  plea supplement including the waivers as outlined by the

15  government.

16      THE COURT:  Mr. Seals, do you agree with the terms

17  that Ms. Chalk just told us?

18      THE DEFENDANT:  Yes, sir.

19      THE COURT:  All right.  Mr. Stevenson, is it

20  consistent with your understanding also?

21      MR. STEVENSON:  Yes, sir.

22      THE COURT:  Now, Mr. Seales, that's just some of the

23  highlights.  But to be clear, you've read, discussed, and fully

24  understand all of the terms of both the plea agreement and the

25  supplement.  Is that correct?

1     THE DEFENDANT:  Yes, sir.

2     THE COURT:  And there's some provisions that Ms. Chalk

3  mentioned.  I believe they are in paragraph 8 and its

4  subparagraphs where you're giving up some rights that you would

5  otherwise have.

6     Do you understand that by agreeing to this plea

7  agreement that you are giving up your right to appeal the

8  conviction, the sentence, or the manner in which the sentence

9  was imposed on any grounds whatsoever?  And you're also giving

10  up the right to raise those same issues in any postconviction

11  proceedings, in other words, like a habeas proceeding,

12  including but not limited to, a motion under Section 2255.

13     Have you discussed what you're giving up there in

14  paragraph 8?

15     MR. STEVENSON:  Yes, sir.

16     THE COURT:  And are you knowingly and voluntarily

17  agreeing to those waivers along with all of the other terms of

18  both the plea and the plea supplement?

19     THE DEFENDANT:  Yes, sir.

20     THE COURT:  Do you the terms of the plea agreement and

21  supplement represent everything that you've agreed to with the

22  government?

23     THE DEFENDANT:  Yes, sir.

24     THE COURT:  In other words, nobody's made any side

25  deals here?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Okay.  Has anyone made any other offers or

3    promises of any kind in an effort to induce you to plead

4    guilty?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Do you understand that the terms of the

7    plea agreement and the supplement are just recommendations to

8    the court and that I can reject those recommendations without

9    allowing you to withdraw your plea of guilt and impose a

10   sentence that's more severe than you may anticipate?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Okay.  Ms. Chalk, I looked at this

13   quickly.  I didn't see any stipulation -- well, there's a

14   stipulation with respect to the acceptance of responsibility.

15         MS. CHALK:  Yes, Your Honor.  The government does

16   stipulate that the defendant should receive the two levels of

17   acceptance of responsibility, and the government will grant the

18   third level as well, but there is no other stipulation.

19         THE COURT:  All right.  Mr. Stevenson, do you have a

20   copy of the signed documents?

21         MR. STEVENSON:  I do, Your Honor.

22         THE COURT:  Is there a preliminary order of forfeiture

23   also?

24         MS. CHALK:  There will be, Your Honor.  I just didn't

25   have an opportunity to have it before the court.

1          THE COURT:  That's understandable.

2          MR. STEVENSON:  I'd also ask for the record that

3    probation would note the stipulation as it relates to

4    acceptance of responsibility.

5          THE COURT:  Okay.  Thank you.

6          MR. STEVENSON:  May I approach, Your Honor?

7          THE COURT:  Yes, sir.  The plea agreement is a six --

8    a seven-page document.  It's been fully executed.  It's

9    received in the record.

10         The supplement is a five-page document.  It's fully

11   executed, and it's received under seal.

12         Has anyone attempted in any way to force you to plead

13   guilty in this case?

14         THE DEFENDANT:  No, sir.

15         THE COURT:  Are you pleading guilty of your own free

16   will because you are guilty?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Do you understand that the offense to

19   which our pleading guilty or the offenses are felony offenses?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  And do you understand that if I accept

22   your plea you will be adjudged guilty of those offenses?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Obviously I know that one of these

25   offenses is related to a prior conviction that you have.  But

1   to the extent that your civil rights may have been restored, I

2   want to make sure that you understand that a felony conviction

3   may deprive you of valuable civil rights such as the right to

4   vote, the right to hold public office, the right to serve on a

5   jury, and rate right to possess any kind of firearm.  Do you

6   understand?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Also want to make sure you understand the

9   possible penalties related to Counts 1 and 3.  Count 1 charges

10  you under Title 21 of the United States Code Section 841(a)(1)

11  with possession with intent to distribute five grams or more of

12  methamphetamine.  Do you understand that that carries term of

13  incarceration of not less than five years and not more than 40

14  years?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Okay.  Do you understand that that carries

17  a fine of up to $5 million?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you understand that it carries term of

20  supervised release of not less than four years?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  All right.  Count 3 charges you under 18

23  USC Section 924(c) for possession of a firearm in furtherance

24  of a drug trafficking crime.  Do you understand that that

25  carries term of incarceration of not less than five years but

1    not more than life?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Do you understand it carries a fine of up

4    to $250,000?

5          THE DEFENDANT:  Yes, sir.

6          MS. CHALK:  Your Honor, I'm sorry.  I left off the

7    word "consecutive" for the 924(c).  By statute Count 3 has to

8    run consecutive to any other sentence imposed.  That's plainly

9    stated in the plea agreements.  I apologize.

10         THE COURT:  Thank you.  All right.  Mr. Seales, that's

11    an important point.  I want to make sure you understand that

12    Count 3 is not less than five years but not more than life

13    consecutive to the sentence as to Count 1.  Do you understand

14    that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  In other words, it's added on top of

17    whatever the sentence is for Count 1.  Do you understand?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Okay.  All right.  Do you understand that

20    Count 3 carries a term of supervised release of not more than

21    five years, that --

22         MS. CHALK:  One second, Your Honor.

23    (Short Pause)

24         MS. CHALK:  I think it's three years, Your Honor.

25    (Short Pause)

1          MS. CHALK:  Your Honor, I've consulted with probation.

2     Since the maximum is up to life, it is not more than five

3     years.

4          THE COURT:  And is it consecutive to Count 1?

5          MS. CHALK:  All supervision terms are concurrent, Your

6     Honor.

7          THE COURT:  All right.  So do you understand that as

8     to Count 3 there would be a term of supervised release of not

9     more than five years?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And do you understand that with respect to

12     supervised release that you would be on supervised release

13     after you are released from prison?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And you understand that while you're on

16     supervised release there's certain rules you have to follow?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Do you understand that if you break the

19     rules you could be sent back to jail?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Do you understand that if that happens you

22     could be sent back for the full term of your supervised release

23     and you would not get any credit for any time you had already

24     served on supervised release?

25          THE DEFENDANT:  Yes, sir.

1        THE COURT:  Do you understand in this case I would

2    order you to forfeit certain property to the government?

3        THE DEFENDANT:  Yes, sir.

4        THE COURT:  Ms. Chalk, I don't think there's a

5    restitution issue.

6        MS. CHALK:  There is not, Your Honor.

7        THE COURT:  Okay.  Mr. Seales, do you understand that

8    there's a mandatory assessment of $100 per count?

9        THE DEFENDANT:  Yes, sir.

10       THE COURT:  Do you understand that all these things

11   I've just gone through, a term of incarceration, the fine,

12   supervised release, special assessment forfeiture, these are

13   all possible consequences of changing your plea today?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  Have you discussed the sentencing

16   guidelines with Mr. Stevenson?

17       THE DEFENDANT:  No, sir.

18       THE COURT:  Well, let's make --

19       MR. STEVENSON:  I apologize, Your Honor.

20    (Short Pause)

21       THE DEFENDANT:  Yes, sir.

22       THE COURT:  Okay.  Just to make sure we're all on the

23   same page, when I say the "sentencing guidelines," there's a

24   set of guidelines that help me determine the appropriate

25   sentencing range for this particular case.  Does that help you

1   recall whether you've discussed that with Mr. Seales?

2          THE DEFENDANT:  No, sir.  He said I would have to wait

3   on the presentence report.

4          THE COURT:  I'm sorry?

5          THE DEFENDANT:  He said I would have to wait on the

6   presentence report.

7          THE COURT:  He's right about that.  In fact, that's

8   the next thing I was going to ask you.  As we sit here today,

9   nobody can tell you what your correct sentencing guideline

10  range is.  We've got to wait on the presentence report.  But I

11  just want to make sure that in general you have discussed the

12  sentencing guidelines with Mr. Stevenson.

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  And then the point that he was making to

15  you, and that is -- I assume he's giving you some estimates,

16  but regardless of any estimates, we won't know what your

17  sentencing guideline range is until that presentence report is

18  finished.  Do you understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And, in fact, the actual guideline range

21  can be very different from any estimate that Mr. Stevenson told

22  you.  Do you understand that?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Okay.  Do you understand that the

25  government range is advisory, which means I'll consider the

1  guideline range but I'm not required to follow it?

2  THE DEFENDANT: Yes, sir.

3  THE COURT: So, in other words, I could impose a

4  sentence that's below the guideline range as long as it's not

5  below the statute, but below the guideline range, or I could

6  impose a sentence that's above the guideline range and in this

7  case anything up to life in prison. Do you understand that?

8  THE DEFENDANT: Yes, sir.

9  THE COURT: And it's your intent to change your plea

10  knowing that the sentence could be anything up to life in

11  prison?

12  THE DEFENDANT: Yes, sir.

13  THE COURT: Okay. Do you understand that there is no

14  parole system in the federal system and that if you're

15  sentenced to prison you're not going to be released on parole?

16  THE DEFENDANT: Yes, sir.

17  THE COURT: You can earn good-time credit, but there's

18  no parole board like you would have in the state system. Do

19  you understand that?

20  THE DEFENDANT: Yes, sir.

21  THE COURT: I also want to make sure that you

22  understand that by changing your plea you're going to give up

23  some rights that you would otherwise have related to trials.

24  Do you understand that you have the right to plead not guilty

25  to any offense that's been charged against you and that you do

1    not have to change that plea?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Do you understand that you would then have

4    the right to a trial by jury?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Do you understand that at trial you would

7    be presumed innocent and the government would have to prove

8    your guilt beyond a reasonable doubt?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you understand that you would then have

11    the right to the assistance of an attorney for every stage of

12    your case and that if you could not afford an attorney, I would

13    appoint one for you?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Do you understand that if we had a trial

16    you would have the right to be in the courtroom so that you

17    could see and hear all the witnesses?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Do you understand you would have the right

20    to have your attorney ask those witnesses questions in your

21    defense?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Do you understand that if you wanted to

24    testify at trial, you would be allowed to testify but that if

25    you did not want to testify, nobody could make you testify?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you understand that you could issue

3    subpoenas that would compel witnesses to come to court to

4    testify in your defense?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Do you understand that if you decided not

7    to testify and if you decided not to put on any evidence at

8    all, that those facts could not be used against you?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  And do you further understand that by

11   entering a plea of guilt today you will have given up your

12   right to a trial along with all these other rights related to

13   trials that you and I just discussed?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  I also want to make sure that you

16   understand what's called the elements of the crime.  In every

17   criminal case, there's certain things that the government must

18   prove.  And the government must prove those things beyond a

19   reasonable doubt.  And not only that, they've got to prove all

20   of them.

21         So, for example, if there are four essential elements,

22   they've got to prove all four beyond a reasonable doubt.  They

23   can't prevail if they only prove three.  Okay?

24         Now, I'm going to go through the elements of the two

25   offenses in Counts 1 and 3.

Count 1 charges you under Title 21 of the United States Code Section 841(a)(1), which makes it a crime for anyone knowingly or intentionally to possess with intent to distribute a controlled substance.  Methamphetamine is a controlled substance within the meaning of this law.

For a jury to find you guilty of this crime, it would have to be convinced that the government has proven each of the four elements beyond a reasonable doubt:

First, that the defendant knowingly possessed with intent to distribute a controlled substance.

Second, that the substance was methamphetamine.

Third, that the defendant possessed the substance with the intent to distribute it.

And, fourth, that the substance stated in the indictment is five grams or more of methamphetamine.

Count 3 charges you under Title I of the United States Code Section 924(c)(1), which makes it a crime for anyone to use or carry a firearm during and in relation to a drug trafficking crime.  For a jury to find you guilty of this offense, it would have to be convinced that the government has proven each of the following beyond a reasonable doubt:

First, that the defendant knowingly possessed methamphetamine, a controlled substance, with intent to distribute it.

And, second, that the defendant knowingly used and

carried a firearm during and in relation to the defendant's

possession of methamphetamine with intent to distribute.

Now, have you discussed those elements with

Mr. Stevenson?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that the government has

the burden of proving each essential element as to each count

before a jury could find you guilty of those counts?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand what each of those

elements means?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Stevenson, would you agree that you've

had those conversations and that your client does understand

the elements of the offense?

MR. STEVENSON:  Yes, sir, that is correct.

THE COURT:  All right.  Mr. Seales, at this point

Ms. Chalk is going to tell me the facts that she would have

presented had we gone to trial.  And again I'll ask you to

listen closely because when she's finished I'm going to ask you

if you agree with what she told me.  Okay?

MS. CHALK:  Thank you, Your Honor.  If this case were

to proceed to trial, the government would show that on

January 22nd, 2018, members of the Gulf Coast Regional Fugitive

Task Force traveled to 13321 Highway 16 East in Philadelphia,

1  Mississippi, to arrest the defendant, Dijon Jamese Seales, also

2  known as DJ, for a warrant that had been issued out of the

3  Northern District of Texas for bond violations.

4          The members of the Gulf Coast Regional Task Force that

5  arrived at the residence were clearly marked as members of

6  police and United States Marshal Service.  They came under the

7  carport of the residence.  There was an open door and proceeded

8  to knock loudly and announce their presence.

9          They determined that there was movement inside the

10  residence, and that movement had come from a single individual

11  later identified as the defendant.  The defendant took himself

12  into one of the bedrooms and closed the door and attempted to

13  go out a window of that bedroom.  Another member of the task

14  force was outside directing the defendant to show his hands and

15  get on the ground.  The defendant retreated back into the

16  bedroom and tried to then go out through the hallway where

17  other members of the team were there.

18          They attempted to place him under arrest.  The

19  defendant resisted, and the members of the Marshal Service had

20  to deploy their taser in order to get the defendant arrested.

21          In the bedroom where the defendant had placed himself

22  was found a Glock 43 pistol previously described serial number

23  BEME924 that was in plain view on the side dresser table in

24  that bedroom.

25          The additional firearm was also recovered and further

1　described as a Ruger AR-556 assault type rifle, serial number

2　85413843, a bump stock, and two magazines lying in plain view

3　on the floor of a closet, all within distance of the

4　defendant -- in reaching distance of the defendant.  There was

5　also several rounds of ammunition to fit the rifle that was

6　recovered.

7　　　　Approximately 16.9 grams of methamphetamine was

8　recovered from the pocket of the defendant.  It was tested at

9　the Department of Homeland Security, United States Customs and

10　Border Protection crime laboratory to determine to be 16.9

11　grams of methamphetamine with a purity of 72.4 percent, five

12　grams of that in excess of the purity of 80 percent.

13　　　　The defendant was also found in possession of $1,800

14　in cash that he had contained in a brown purse, bag type object

15　that he was trying to flee the scene with.

16　　　　The agent took the defendant into custody.  All of

17　items were then recovered and taken to the crime laboratory for

18　testing of the methamphetamine, and the firearms and related

19　ammunition were turned over to the Bureau of Alcohol, Tobacco,

20　Firearms, and Explosives.

21　　　　The defendant possessed the methamphetamine with the

22　intent to distribute it on January 22, 2018.  He also possessed

23　and used and carried these firearms in furtherance of a drug

24　trafficking crime in relation to the drug trafficking crime as

25　charged in Count 1 of the indictment.

1  This activity occurred in Philadelphia, Mississippi,

2  which is in Neshoba County in the Northern Division of the

3  Southern District of Mississippi within the jurisdiction of

4  this court.

5  THE COURT:  Thank you.  Mr. Seales, did you hear and

6  understand everything that Ms. Chalk said?

7  THE DEFENDANT:  Yes, sir.

8  THE COURT:  And do you agree with the facts that she

9  just told me?

10  THE DEFENDANT:  Yes, sir.

11  THE COURT:  All right.  How do you now wish to plead?

12  Guilty or not guilty as to Counts 1 and 3?

13  THE DEFENDANT:  Guilty.

14  THE COURT:  It's the finding of the court in the case

15  of United States v. Dijon -- how do you pronounce your middle

16  name?

17  THE DEFENDANT:  Jamese.

18  THE COURT:  Dijon Jamese Seales having reviewed the

19  defendant in court and considered his demeanor and responses,

20  the defendant is fully competent and capable of entering an

21  informed plea, that the defendant is aware of the nature of the

22  charges and the consequences of the plea and that the plea of

23  guilty as to Counts 1 and 3 are knowing and voluntary pleas

24  supported by an independent basis in fact containing each of

25  the essential element of the offense.  The plea is therefore

accepted and the defendant is adjudged guilty of those offenses.

Counsel, I'm looking at May 10th at 9:00.

MR. STEVENSON:  May I have a brief moment just to check?

THE COURT:  Of course.

MS. CHALK:  That's fine with the government, Your Honor.

MR. STEVENSON:  It's going to take my phone a moment to power up.  I don't believe we have a conflict, and I'll notify the court right away if we do.

THE COURT:  Obviously, Mr. Stevenson, if there's a conflict we'll work around it.  But for now let's set it for May 10 at 9:00.

Mr. Seales, between now and then the probation office will prepare the presentence report that we discussed earlier. They will probably start that process in just a minute.

You have the right to have Mr. Stevenson with you whenever you meet with the probation officers, and I also encourage defendants to make sure that you do have your attorney with you.  I say this every time, and then as recently as last month somebody ignored my advice.  They met with the probation officer without their attorney and said something really stupid that increased their sentence.  Your attorney is there to help you.  Make sure he's with you.  Okay?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  Once that report's finished,

3     you're going to get a copy.  So will the government.  Everybody

4     will have a chance to make objections if there are things in

5     the report that you disagree with.

6          If the objections can't be resolved -- and sometimes

7     they can be.  If they can't, I'll rule on the objections when

8     we come back on May 10th.

9          Also on May 10th, you will at that point have your

10    right of allocution, and you can tell me at that time anything

11    that you want me to know before the sentence is imposed.  Okay?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  All right.  Is there anything further from

14    the government at this point?

15         MS. CHALK:  No, Your Honor.

16         THE COURT:  I know that it's an unusual situation but

17    you're going to give me the preliminary order of forfeiture

18    maybe sometime next week?

19         MS. CHALK:  Yes, sir.  I'll e-mail it to Mr. Stevenson

20    so he and his client can review and sign it, and I'll tender it

21    to the court.

22         THE COURT:  All right.  Mr. Stevenson, anything

23    further from your side?

24         MR. STEVENSON:  No, sir, nothing from defense.

25         THE COURT:  If there is nothing else we're adjourned.

1    Thank you.

2        (Recess)

1    CERTIFICATE OF REPORTER

2

3        I, CHERIE GALLASPY BOND, Official Court Reporter, United

4    States District Court, Southern District of Mississippi, do

5    hereby certify that the above and foregoing pages contain a

6    full, true and correct transcript of the proceedings had in the

7    aforenamed case at the time and place indicated, which

8    proceedings were recorded by me to the best of my skill and

9    ability.

10        I certify that the transcript fees and format comply

11   with those prescribed by the Court and Judicial Conference of

12   the United States.

13

14        This the 14th day of October, 2019.

15

16                    s/ *Cherie G. Bond*
                     Cherie G. Bond
17                   Court Reporter

18

19

20

21

22

23

24

25